# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs March 5, 2014

## KRISTOPHER SMITH v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 08-02796     John W. Campbell, Judge**

---

**No. W2013-01135-CCA-R3-PC  - Filed April 23, 2014**

---

The petitioner, Kristopher Smith, appeals the denial of his bid for post-conviction relief from his 2009 Shelby County Criminal Court jury convictions of aggravated kidnapping and rape, claiming that the ruling in *State v. White*, 362 S.W.3d 559 (Tenn. 2012), requires dismissal of his aggravated kidnapping conviction and that he was deprived of the effective assistance of counsel.  Discerning no error, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

J. Jeffrey Lee, Memphis, Tennessee, for the appellant, Kristopher Smith.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Melanie Headley, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

        A Shelby County Criminal Court jury convicted the petitioner of aggravated kidnapping and rape for his October 23, 2007 attack upon 16-year-old J.V.[1]  The victim's account of the offenses, as summarized by this court on direct appeal, is as follows:

        On October 23, 2007, the sixteen-year-old victim, J.V., was
        walking home from school and noticed a "beige" Cadillac pull

---

[1]As is the policy of this court, we refer to the minor victim by her initials.

up behind her. She identified a photograph of the car, Exhibit 6, as the same car that approached her the day of the offense. A man, whom she later identified as Smith, got out of the car and pointed a gun at her. Smith told her "to be quiet" and "to get in the car." The victim complied, got into the front seat of the car, and Smith drove her to "a dark place." The victim testified that Smith then forced her into the back seat of the car, had her to remove her pants and underwear, and placed his penis inside of her vagina. She explained that they had "regular" sex but could not recall if Smith ejaculated. The victim observed tattoos on Smith's body including a tiger on his right chest, the word "Boo" on his arm, and other words on the left side of Smith's chest. Before Smith pushed her out of the car, the victim grabbed a piece of paper from the car. When the victim found her way home, she told her mother about the attack and reported it to the police. The paper she grabbed from the car, Smith's electric bill receipt, was used by the police to locate Smith the next day. She did not know Smith prior to her attack in the instant case.

*State v. Kristopher Smith*, No. W2010-00125-CCA-R3-CD, slip. op at 1-2 (Tenn. Crim. App., Jackson, June 2, 2011), *perm. app. denied* (Tenn. Sept. 21, 2011).

In his timely-filed petition for post-conviction relief, the petitioner claimed that the prosecutor's use of two peremptory strikes deprived him of the constitutional right to trial by a fair and impartial jury; that the 2005 Sentencing Act Amendments deprived him of his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; that the prosecutor engaged in misconduct by presenting the victim's perjured testimony; and that he was deprived of the effective assistance of counsel at trial. In his amended petition, the petitioner added a claim that his aggravated kidnapping conviction runs afoul of the ruling in *State v. White* and condensed his many claims of ineffective assistance of counsel into claims that counsel performed deficiently by failing to make a *prima facie* showing of purposeful discrimination in the prosecution's use of peremptory challenges against two black male jurors, by failing to make the same showing with regard to a white male juror, by failing to adequately investigate, by failing to present all potential alibi witnesses, and by failing to interview all potential witnesses.

At the February 15, 2013 evidentiary hearing, the petitioner's mother, Beverly Smith, testified that she could have provided alibi testimony for the petitioner had she been called to testify at trial. She said that the petitioner was at her home caring for her sick

daughter from 5:00 p.m. until midnight on the night of the offense and that he left for only a brief time to purchase food for them. She testified that she was unable to pay trial counsel the entirety of his fee before the trial in this case and that her failure to pay became an issue. She recalled that trial counsel often failed to return her telephone calls and that she believed his neglect was "because [she] owed him the money." Ms. Smith said that trial counsel prepared her to testify at trial but never called her as a witness.

During cross-examination, Ms. Smith said that she attended more than 10 meetings with trial counsel and the petitioner and that the petitioner attended more meetings with trial counsel on his own. With regard to her potential alibi testimony, she said that on the day of the offenses, she left for work at approximately 4:55 p.m. and that the petitioner had arrived to care for her daughter, Keera Smith. She said that she returned at approximately 8:00 p.m. to be with her daughter. When she got home, the petitioner was not there. She said that she and her daughter saw the petitioner "going down Hollywood and . . . going down Chelsea." She recalled that the petitioner returned to her house briefly at approximately 9:00 p.m. and then "left with his friend named, Bobo." She said that he returned a short time later "and got on the computer for a while" before leaving her home for the night at approximately 10:45 p.m. She conceded that she did not observe all of the petitioner's comings and goings first hand.

The petitioner's father, Cecil Smith, testified that his failure to pay trial counsel in full before the trial became an issue at the trial. Mr. Smith said that he "paid [trial counsel] extra to hire a detective to go get the video" surveillance from a Walgreen's where the petitioner had allegedly gone on the night of the offenses, but trial counsel did not acquire the recording before it was destroyed by the store. Mr. Smith said that he located an expert in deoxyribonucleic acid ("DNA") and that he asked trial counsel to call the expert as a witness, but counsel refused, telling Mr. Smith that the expert "wasn't qualified." Mr. Smith said that neither trial counsel nor the private detective would attempt to locate a qualified expert witness and that he paid the potential witness $4,000.00 in advance of the trial.

During cross-examination, Mr. Smith acknowledged that trial counsel told him that he had been unable to procure the Walgreen's surveillance video but that counsel "had the clerk sign a piece of paper saying that she remembered [the petitioner's] coming in the store and she came to testify." Mr. Smith said that he hired the DNA expert witness after hearing on the radio "this advertisement about baby's momma, find out who the kid's - you can do DNA to get the kids done." He said that he did not provide the expert with any documentation from the petitioner's case. He admitted that he did not see any of the expert's credentials other than that "[h]e advertised he did DNA" and provided paternity testing. He said that he hired the expert without consulting trial counsel but that he did make counsel aware of the man's name and telephone number some months before the petitioner's trial.

The petitioner testified that he hired trial counsel on the day following his arrest and that he immediately informed counsel of his trip to the Walgreen's on the night of the offenses. The petitioner said that he asked trial counsel to call as alibi witnesses a friend he had taken to the hospital, his mother, his sister, his son's mother, and the cashier from the Walgreen's. He said that his friend was unable to attend the evidentiary hearing because he had to return to Georgia to be with his pregnant girlfriend.

The petitioner testified that just before jury selection, he and trial counsel had a heated exchange regarding the petitioner's failure to pay counsel's fee in its entirety prior to the trial. He said,

> Well, me and [trial counsel] had a few words, because I think it was maybe sixteen-hundred-dollars that he was owed. And he was telling me that I want my money, in so many words, I want my money. I mean, this trial is starting and I haven't been paid in full, I want my money.

He said that counsel's demand for payment "made [him] kind of mad." He said that it was immediately after this exchange that he learned that the DNA expert hired by Mr. Smith would not be permitted to testify.

The petitioner said that he asked trial counsel to offer into evidence the petitioner's medical records from the county jail, which would have shown, according to the petitioner, that he was treated for Chlamydia following his arrest for the offenses in this case. He said that counsel did not attempt to obtain the records. The petitioner identified his health records from the jail, which he obtained in preparation for the hearing and which indicated that he was treated for Chlamydia in November 2007. He said that he wanted the record presented at trial after proof was admitted that the victim did not have any sexually transmitted disease.

The petitioner testified that trial counsel was ineffective in his cross-examination of the victim, failing to press her regarding several inconsistencies in her account of the offenses. He said that, despite her testimony to the contrary, the victim was familiar with the defendant before the offenses. The petitioner said that the video surveillance from the Walgreen's and from the hospital where he took his friend would also have discredited the victim's testimony that the defendant kidnapped her at 5:00 p.m. and held her hostage for seven hours. The petitioner also presented a receipt from the Ultimate Gear store at the Raleigh Springs Mall that he claimed showed that he was at the mall at 6:21 p.m. on the date of the offenses. The petitioner said that the receipt from the Walgreen's, which showed that the petitioner was at the store at 8:27 p.m., and the receipt from the

Ultimate Gear store were both in his pocket at the time of his arrest and that he provided both to trial counsel on the day that he hired counsel. Counsel did not present the Ultimate Gear receipt at trial.

During cross-examination, the petitioner stated that at the time of the offenses, he lived with the mother of his child, Monique Cage, at 5336 or 5337 Hallbrook. He conceded that trial counsel sent mail to him at his parents' address. With regard to the video surveillance recordings, the petitioner said that he telephoned the Walgreen's and was told that "they only hold the tapes for ninety days." "[T]he people in the mall" told the petitioner "that they had recently changed security companies, so it would be kind of hard to track them down." Officials at "The Med" told him that he would have to subpoena any recordings. The petitioner acknowledged that counsel's investigator went to the Ultimate Gear store in an attempt to find a witness to the petitioner's presence in the store on the night of the offenses.

The petitioner said that he met with trial counsel many times between the time of his arrest and the trial, both at the jail and at trial counsel's office. The petitioner reiterated that he wanted trial counsel to call Frank Causey, Keera Smith, Beverly Smith, Monique Cage, and Amber Clark as alibi witnesses. He said that Frank Causey and Keera Smith were unable to attend the evidentiary hearing and that he did not know the whereabouts of Ms. Cage, despite that she was the mother of his son. He said that he was aware that Mr. Causey had a criminal record.

The petitioner acknowledged that trial counsel's cross-examination of the victim was extensive but claimed that counsel failed "to make the link." He also conceded that the alleged DNA expert was actually not an expert in DNA at all. He said, "[H]is degrees were in business and the only thing that he had as far as DNA was continued education. I mean, he didn't have a degree." He admitted that the rules of evidence prohibited trial counsel's calling the hired expert as an expert in DNA evidence. He also admitted that trial counsel vigorously cross-examined the State's DNA expert.

At the conclusion of this testimony, the State noted for the record that trial counsel had passed away before the evidentiary hearing in this case.

In its written order denying relief, the post-conviction court held that the petitioner had failed to establish that trial counsel performed deficiently by failing to present proof of the petitioner's alibi. The court concluded that Ms. Smith's testimony "does not really establish an alibi"; that trial counsel attempted to obtain materials from the Walgreen's and the Ultimate Gear store that would support an alibi defense but was unable to do so; and that counsel did present the alibi proof available to him in the form of the Walgreen's receipt

and testimony from the Walgreen's clerk who waited on the petitioner. The post-conviction court noted that the petitioner failed to present the testimony of Mr. Causey or Keera Smith at the evidentiary hearing and that the petitioner failed to present proof "from anyone connected to Walgreen's or the Raleigh Springs Mall that established that there were video tapes available at the time of petitioner's case preparations or whether such tapes would have shown anything relevant."

The post-conviction court similarly concluded that the petitioner had failed to establish that counsel performed deficiently by failing to present the testimony of the DNA expert hired by the petitioner's father. The court noted that both the petitioner and Mr. Smith testified that trial counsel told them that the expert was not qualified to testify at the petitioner's trial. The court also observed that the petitioner failed to identify the DNA expert at the evidentiary hearing and did not call the expert as a witness at the evidentiary hearing.

With regard to the petitioner's claim that trial counsel failed to adequately cross-examine the victim, the post-conviction court ruled that counsel did not perform deficiently. The court observed "that the trial transcript shows that [trial counsel] vigorously cross-examined the victim and brought out inconsistent statements that the victim had made at the preliminary hearing."

The post-conviction court held that the petitioner failed to establish that counsel failed to zealously represent the petitioner because the petitioner did not pay counsel's full fee before trial. The court noted that it was "understandable that [counsel] would be upset when he is about to try a case and the fee has not been paid in full. However, the record shows that counsel vigorously represented the petitioner at trial." The court found that "no proof in the record [exists] to show that" the petitioner's failure to pay counsel's fee in its entirety prior to the trial caused counsel to render deficient performance.

Finally, the post-conviction court ruled that the *White* decision did not avail the petitioner of post-conviction relief. *See State v. White*, 362 S.W.3d 559 (Tenn. 2012). The court noted the change in the law created by *White*, but it concluded that the plain language of the opinion indicated that it was not to be retroactively applied.

In this appeal, the petitioner again contends that he was deprived of the effective assistance of counsel and that the *White* ruling entitles him to dismissal of his aggravated kidnapping conviction.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable

because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A.§ 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the post-conviction court's findings of fact are conclusive unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn.1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn.1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App.1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In our view, the record supports the decision of the post-conviction court denying post-conviction relief because the petitioner failed to establish any of his claims by clear and convincing evidence.

*State v. White*

First, the decision in *White* has no application to the petitioner's case and, as such, does not entitle him to post-conviction relief. In *White*, the supreme court classified its ruling as one that clarified existing law rather than "creating a new standard for kidnapping" and stated that the ruling "does not articulate a new rule of constitutional law

or require retroactive application." *State v. White*, 362 S.W.3d 559, 578 (Tenn. 2012). Later, in *State v. Cecil*, the supreme court stated that *White* is applicable to only those cases that were in some stage of the appellate process when *White* was filed on March 9, 2012. *See State v. Cecil*, 409 S.W.3d 599, 608 (Tenn. 2013). The petitioner's trial occurred in 2009, and our supreme court denied his application for permission to appeal on direct appeal in 2011. As a result, the petitioner's appeal was not in any stage of the appellate process at the time *White* was filed.

*DNA Expert*

The petitioner contends that trial counsel performed deficiently by failing to secure and present a qualified DNA expert at trial, but the petitioner failed to secure and present a DNA expert at the evidentiary hearing. As we have repeatedly cautioned, a post-conviction petitioner cannot succeed on a claim that "counsel was deficient [for failing to call] a known witness" unless the petitioner "produce[s] a material witness who (a) could have been found by a reasonable investigation and (b) would have testified favorably in support of his defense if called." *Black v. State*, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990). Neither the post-conviction court nor this court "can speculate or guess on . . . what a witness's testimony might have been if introduced." *Id.* at 757. The petitioner is not entitled to relief on this claim.

*Failure to Present Alibi Proof*

Although the petitioner claimed that trial counsel performed deficiently by failing to present proof of alibi in the form of witness testimony and video surveillance, he failed to establish this claim at the evidentiary hearing. The post-conviction court correctly concluded that Ms. Smith's evidentiary hearing testimony did not, in fact, establish an alibi for the petitioner. Trial counsel's alleged failure to call Mr. Causey and Keera Smith as alibi witnesses does not avail the petitioner the relief he desires because he failed to present either witness at the evidentiary hearing. The petitioner's failure to present the testimony of these witnesses at the evidentiary hearing results in a failure of his claim for relief on grounds that counsel should have called them at trial. *Id.* at 757-58. Similarly, because the petitioner failed to present any proof that video surveillance recordings existed at the time counsel was hired to represent the petitioner and that the recordings supported the petitioner's alibi defense, the petitioner failed to establish that trial counsel performed deficiently by failing to secure video surveillance recordings from the Walgreen's or the Ultimate Gear.

*Petitioner's Sexually Transmitted Disease*

The petitioner also claims that trial counsel performed deficiently by failing to

present at trial records from the Shelby County Jail that established that the petitioner was treated for Chlamydia while incarcerated pending trial in this case. He claimed that proof of his sexually transmitted disease was exculpatory because the victim had no sexually transmitted disease when examined following the offenses in this case. In our view, even if the records were arguably exculpatory, they were still extremely inflammatory because they demonstrated that the petitioner was incarcerated and contained graphic descriptions of the petitioner's symptoms. Moreover, the records do not actually contain any test results indicating that the petitioner had Chlamydia or when he contracted the disease. The petitioner is not entitled to relief on this issue.

*Petitioner's Failure to Pay*

Finally, the record is devoid of any proof that petitioner's failure to pay counsel's fee in its entirety prior to trial affected trial counsel's representation in any way. Counsel vigorously cross-examined the State's witnesses and put on that alibi proof available to him. Nothing suggests that his efforts were anything less than zealous, let alone that he allowed his understandable frustration with the petitioner's failure to pay the agreed upon fee to hamper his representation. The petitioner is not entitled to relief on this issue.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE